UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

DOUG MCGONEGLE,

    **Plaintiff**

    v.                                     Case No. 1:19–cv–442

SELECT COMFORT RETAIL          JUDGE DOUGLAS R. COLE
CORPORATION,

    **Defendant.**

## OPINION AND ORDER

This cause is before the Court pursuant to various Motions in Limine that both Defendant Select Comfort Retail Corporation ("Sleep Number") and Plaintiff Doug McGonegle recently filed in connection with the soon-upcoming trial in this matter. As to Sleep Number's three Motions, the Court (1) **DENIES** Sleep Number's Motion in Limine Regarding Exclusion of Evidence Supporting Unpled Alcoholism Claim (Doc. 43), (2) **GRANTS** Sleep Number's Motion in Limine to Exclude Testimony and Documents Related to Unemployment Compensation Review Commission Decision (Doc. 48), which is unopposed, and (3) **GRANTS IN PART** and **DENIES IN PART** Sleep Number's Motion in Limine to Exclude Testimony and Argument of Dismissed Claim and Speculative Testimony on Remaining Claim (Doc. 42), as discussed in more detail below. With respect to McGonegle's three Motions, the Court (1) **GRANTS IN PART** and **DENIES IN PART** McGonegle's Motion in Limine Re: Impermissible Character Evidence (Doc. 45), (2) **GRANTS** McGonegle's Motion in Limine Re: Previously Dismissed Disability Discrimination Claim (Doc. 46), and (3) **GRANTS**

McGonegle's Motion in Limine Re: Plaintiff's Impairments (Doc. 47). As with all motions in limine, the Court's rulings here are preliminary and intended to provide guidance to the parties in advance of trial. The Court's determination as to the admissibility of any specific evidence will depend on the circumstances under which a party seeks to introduce that evidence at trial.

## BACKGROUND[1]

Douglas McGonegle worked as an at-will employee for Sleep Number, a mattress and sleep accessory retailer, from July 13, 2015, until Sleep Number terminated his employment on October 23, 2017. (Op., Doc. 36, #692). Despite McGonegle's strong sales performance, the relationship between McGonegle and his employer soured after an incident in October 2017. (*Id.* at #693). Stated briefly, store manager Julie Roborecki came to suspect that McGonegle had improperly offered a customer a "family and friends" discount on a bed and mattress. (*Id.* at #694).

The major factual dispute in the case concerns what happened when Roborecki confronted McGonegle about the allegedly unauthorized discount. According to Roborecki, McGonegle became upset, yelling, cursing, slamming the countertop, and storming out of the store—and she asserts that he did so despite the store being crowded with customers. (*Id.* at #695). McGonegle, on the other hand, states that he neither raised his voice nor used profane language, and claims that all he did was

---

[1] The Court has extensively summarized the facts of this case in its previous Opinion and Order denying Sleep Number's Motion for Summary Judgment (Doc. 28). (*See generally* Op., Doc. 36, #692–98). Accordingly, the Court abbreviates that previous discussion here, summarizing only the factual and procedural background pertinent to the Motions in Limine before the Court.

2

leave the store on short, routine breaks. (*Id.* (citing McGonegle Dep., Doc. 21, #116–17)). Roborecki testified that McGonegle's outburst, along with the alleged offer of an unauthorized discount, triggered her decision to seek McGonegle's termination. (*Id.*).

It is undisputed that McGonegle's physician, Dr. Gerke, had previously diagnosed McGonegle with "essential tremor," a medical condition that sometimes caused McGonegle's hands to shake involuntarily. (Gerke Decl., Doc. 30-1, #578). In Dr. Gerke's words: "Essential Tremor is a neurological disorder that causes involuntary movement, typically in the hands, fingers, or arms." (*Id.*).

McGonegle suspected that his shaking hands bothered Roborecki, who allegedly told him that it "doesn't look good" when his hands shake in front of customers. Based on Roborecki's numerous comments to McGonegle and other employees about his shaking hands, McGonegle concluded that Roborecki, and thus Sleep Number, discriminated against him based on his essential tremor. (Op., Doc. 36, #697).

McGonegle filed his Complaint (Doc. 1) on June 11, 2019, alleging discrimination in violation of the Americans with Disabilities Act. In particular, McGonegle alleged that Sleep Number discriminated against him both (1) on the basis of an actual disability (his essential tremor), and (2) because Sleep Number regarded him as disabled.

Sleep Number moved for summary judgment (Doc. 28) on May 29, 2020. In McGonegle's Response (Doc. 31) to Sleep Number's Motion (Doc. 28), McGonegle argued that in addition to his essential tremor, the record evidence showed that Sleep

3

Number also may have discriminated against him because it regarded him as an alcoholic. (*See* Resp. in Opp'n to Mot. for Summ. J., Doc. 31, #605). (It is undisputed that McGonegle was not an alcoholic.) Before raising it in his Opposition, McGonegle had not previously presented this specific argument. In its reply brief, Sleep Number argued that McGonegle could not present the alcoholism theory because he had neither pled it in his Complaint (Doc. 1) nor pursued it at the Equal Employment Opportunity Commission (EEOC). (*See* Reply in Supp. of Mot. for Summ. J., Doc. 32, #658).

On January 22, 2021, the Court issued an Opinion and Order (Doc. 36) denying Sleep Number's Motion for Summary Judgment (Doc. 28). As relevant here, the Court agreed with Sleep Number that McGonegle could not create a genuine dispute of material fact as to his actually disabled theory because he admitted that his essential tremor did not substantially limit him in a major life activity, a necessary showing for a "disability" under the ADA, even as amended by the Americans with Disabilities Act Amendments Act ("ADAAA"). (*See* Op., Doc. 36, #707). However, McGonegle's claim that Sleep Number terminated him because it *regarded* him as disabled survived summary judgment. (*Id.* at #721). Moreover, the Court held that, because McGonegle's alcoholism theory grew out of his same core allegation—i.e., that Sleep Number discriminated against him due to his shaking hands—McGonegle could proceed on the theory that Sleep Number regarded him as disabled based on either or both of his essential tremor (which he had) and alcoholism (which he did not have, but which he claims Sleep Number regarded him as having). (*Id.* at #713).

4

As the Court denied summary judgment in part, trial in the matter is set to start on February 15, 2022.

## LEGAL STANDARD

To be admissible, all evidence must be relevant. Evidence is relevant if it tends to make a material fact more or less likely. Fed. R. Evid. 401. Relevant evidence may be excluded if its probative value is substantially outweighed by a danger of unfair prejudice, confusion, or misleading the jury. Fed. R. Evid. 403. Character evidence, or evidence of a person's trait offered to prove that the person acted in accordance with that trait on a particular occasion, is not admissible. Fed. R. Evid. 404(a). Likewise, evidence of a previous act is not admissible to prove that, on a particular occasion, a person committed a similar act. Fed. R. Evid. 404(b). The testimony of a fact witness must have a basis in the witness's personal knowledge. Fed. R. Evid. 602.

## LAW AND ANALYSIS

While the pending motions in limine are cast in terms of evidentiary issues, resolution of the motions requires the Court to address the following contested questions of law: (1) what McGonegle must prove to establish that Sleep Number regarded him as disabled; (2) whether the parties may introduce evidence (or the Court should instruct the jury) that McGonegle is or is not actually disabled; and (3) the scope of evidence regarding incidents in McGonegle's work history that Sleep Number may introduce.[2] Fortunately, the Court has already answered many of the

---

[2] As the Court discusses in more detail below, another question raised in one of Sleep Number's motions in limine (Doc. 48) is not contested: the appropriateness of evidence

pertinent legal questions in its earlier Opinion (Doc. 36), to whose reasoning the Court therefore refers in what follows and on which the Court elaborates only as needed.

**A.  To Prove That Sleep Number Regarded Him As Disabled, McGonegle Must Prove Only That Sleep Number Either Knew He Had Essential Tremor Or Perceived Him To Have Alcoholism.**

As the Court explained in its Opinion (Doc. 36) denying Sleep Number's Motion for Summary Judgment (Doc. 28), to establish that Sleep Number regarded McGonegle as disabled, McGonegle:

> need only show that [his] employer believed [he] had a "physical or mental impairment," as that term is defined in federal regulations … And "physical impairment" is defined broadly, to include "any physiological disorder or condition … affecting one or more body systems." … Here, there can be no dispute that essential tremor is a "disorder or condition" that "affects one or more body systems," a term which expressly includes the neurological system. … Thus, Sleep Number's concession that it knew about McGonegle's tremor suffices to show that it was aware of an "impairment."

(Op., Doc. 36, #713–14) (citations and internal quotation marks omitted). Similarly, the Court stated that "there is no question that alcoholism constitutes an impairment under the ADA." (*Id.* at #716).

Accordingly, McGonegle moves the Court to instruct the jury that essential tremor and alcoholism both constitute impairments. (Mot. in Limine re: Pl. Impairments, Doc. 47, #879). Sleep Number opposes McGonegle's proposed instruction, but it appears to conflate the issue of whether essential tremor and alcoholism are impairments with whether Sleep Number knew or believed that

---

concerning the proceedings and decision of the Unemployment Compensation Review Commission in this matter.

6

McGonegle had those impairments. (*See* Resp. in Opp'n to Mot. in Limine re: Pl. Impairments, Doc. 52, #904 ("Instructing the jury … that Plaintiff has an impairment in the form of an essential tremor … takes away an element of Plaintiff's claim ….")). But instructing the jury that essential tremor and alcoholism are impairments will not relieve McGonegle of any burden to prove to the jury that Sleep Number terminated him because it regarded him as having either of those impairments. It only means that, if Sleep Number did know McGonegle had essential tremor, or if it perceived him to have alcoholism, then Sleep Number regarded McGonegle as disabled.

Sleep Number also argues that it should have the opportunity to show that McGonegle's real or perceived essential tremor or alcoholism were "transitory and minor." (*Id.* at #904). As the Court has previously noted, Sleep Number never made a "transitory and minor" argument on summary judgment, "nor, in any event, does it seem a very strong argument here." (Op., Doc. 36, #717). And as McGonegle notes, Sleep Number also failed to plead that any impairment was "transitory and minor" as an affirmative defense, as it was required to do. (Pl. Obj. to Prop. Jury Instructions, Doc. 44, #940). Accordingly, the Court presently sees no legal or factual basis on which Sleep Number could argue to the jury that either McGonegle's essential tremor or his perceived alcoholism were transitory and minor impairments. Nevertheless, McGonegle has not moved to prevent Sleep Number from introducing evidence that McGonegle's real or perceived impairments were transitory and minor, so the Court does not decide the issue at this time. Should Sleep Number overcome the procedural

7

and substantive obstacles to its "transitory and minor" argument, the Court may consider jury instructions that account for it. For now, however, the Court **GRANTS** McGonegle's Motion in Limine re: Plaintiff's Impairments (Doc. 47).

Separately, Sleep Number has filed a Motion in Limine Regarding Exclusion of Evidence Supporting Unpled Alcoholism Claim (Doc. 43). Sleep Number argues that McGonegle should be prevented from presenting evidence or arguing to the jury that Sleep Number regarded McGonegle as disabled because it regarded him as an alcoholic. (*Id.* at #773). That is so, Sleep Number says, because McGonegle neither included the alcoholism theory in his Complaint (Doc. 1) nor pursued it with the EEOC. Because the Court has already considered and rejected Sleep Number's arguments (*see* Op., Doc. 36, #714–15), and because Sleep Number points the Court to no relevant change in legal or factual circumstances since then, the Court **DENIES** Sleep Number's Motion in Limine Regarding Exclusion of Evidence Supporting Unpled Alcoholism Claim (Doc. 43).

**B.     McGonegle May Not Introduce Evidence To Show Or Argue That He Was Actually Disabled, But He May Introduce Evidence Of His Condition And Diagnosis Of Essential Tremor, Including Dr. Gerke's Testimony.**

Sleep Number has also filed what it styles a Motion in Limine to Exclude Testimony and Argument of Dismissed Claim and Speculative Testimony on Remaining Claim (Doc. 42). In this Motion, Sleep Number asks the Court "to prohibit Plaintiff, his doctor, or any other persons from offering evidence or testimony at trial that Plaintiff is 'actually disabled' or has a medical 'diagnosis,' that Plaintiff's tremor

8

substantially limits or affects him, or that speculates as to what Sleep Number was thinking or believed with respect to Plaintiff's medical condition." (*Id.* at #757).

As discussed above, the Court dismissed McGonegle's actually disabled claim on the grounds that he could not create a genuine dispute as to whether his essential tremor substantially limits him in connection with a major life activity. (*See* Op., Doc. 36, #707). Accordingly, Sleep Number is correct that it would be improper for McGonegle to attempt to prove or argue that he is actually disabled, or that his essential tremor substantially limits him in one or more major life activities. Such argument and evidence would smuggle before the jury a claim the Court has already dismissed on the merits.

On the other hand, McGonegle is also correct that one way for him to prevail on his claim that Sleep Number regarded him as disabled would be to show that he had an "actual … impairment," namely, essential tremor, and that Sleep Number knew of that impairment. (*See* Resp. in Opp'n to Mot. in Limine to Exclude Testimony and Argument of Dismissed Claim and Speculative Testimony on Remaining Claim, Doc. 55, #925). To do so, McGonegle would have to present evidence of such impairment, which would include evidence about his medical condition and its diagnosis. Accordingly, the Court will not categorically exclude such evidence.

As for speculative testimony, Sleep Number appears to ask the Court to prohibit McGonegle from testifying that he believes that Sleep Number fired him either because of his essential tremor or because of its perception that he had alcoholism. (Mot. in Limine to Exclude Testimony and Argument of Dismissed Claim

9

and Speculative Testimony on Remaining Claim, Doc. 42, #767). It says such testimony would be speculative under Federal Rule of Evidence 602. (*Id.* at #766–67). But that all depends on what the evidence shows about the basis for McGonegle's belief. If McGonegle's belief that Sleep Number fired him because of his essential tremor or perceived alcoholism has a basis in McGonegle's personal knowledge, then it may be appropriate for McGonegle to testify that he has formed such a belief, and explain why that is the case. Accordingly, the Court cannot categorically exclude the testimony at issue at this time.

Finally, Sleep Number argues that McGonegle's physician, Dr. Gerke, is an expert witness, and accordingly may not testify at all because he was never disclosed as such. (*Id.* at #768). The Court disagrees. As McGonegle's treating physician, Dr. Gerke is a fact witness who may testify on the basis of his personal knowledge of McGonegle's condition that he has gained in the course of treating McGonegle. *See Merendo v. Ohio Gastroenterology Grp., Inc.*, No. 2:17-CV-817, 2019 WL 3254620, at *2 (S.D. Ohio July 19, 2019). However, Dr. Gerke may not offer expert or opinion testimony that would go beyond his personal knowledge.

Accordingly, the Court **GRANTS IN PART** and **DENIES IN PART** Sleep Number's Motion in Limine to Exclude Testimony and Evidence of Dismissed Claim and Speculative Testimony on Remaining Claim (Doc. 42). Dr. Gerke may testify as to facts based on his personal knowledge from treating McGonegle. His testimony, or any other evidence, may show that McGonegle has a medical diagnosis of essential tremor, and may describe McGonegle's condition. However, McGonegle may not

10

introduce evidence that McGonegle was "actually disabled" in the sense of being substantially limited in one or more major life activities. Finally, McGonegle is not categorically prohibited from testifying as to his beliefs about why Sleep Number fired him, but those beliefs must have a basis in his personal knowledge.

In a related vein, McGonegle brings a Motion in Limine re: Previously Dismissed Disability Discrimination Claim (Doc. 46), requesting that the Court "prohibit Defendant from making any reference to his claim that he suffered from an actual disability or to the Court's order dismissing that claim." (*Id.* at #875). The Court agrees that evidence of McGonegle's dismissed claim would be more prejudicial than probative under Federal Rule of Evidence 403. *See Crabbs v. Pitts*, Case No. 2:16-cv-0287, 2018 WL 5262397, at *10 (S.D. Ohio Oct. 23, 2018) ("[I]t is possible that dismissed claims might have some probative value, however slight[, b]ut the potential for unfair prejudice and confusion to the jury far outweigh any slight probative value."). For example, evidence of the dismissed claim for actual disability discrimination might lead the jury to an inappropriate inference that McGonegle is dishonest or litigious. Moreover, evidence of the dismissed claim might make it more difficult for the jury to focus on the factual question it must decide in this case, which is whether Sleep Number terminated McGonegle because it regarded him as disabled.

Even apart from the prejudice and confusion issues, Sleep Number has not convincingly identified a legitimate purpose for introducing evidence that McGonegle previously brought, and the Court dismissed, an actual disability claim. Sleep Number appears concerned the jury will feel sympathy for McGonegle if it believes

11

that he has a disability. (Resp. in Opp'n to Mot. in Limine re: Previously Dismissed Disability Discrimination Claim, Doc. 53, #909). But as discussed above, the Court will not admit evidence or argument showing that McGonegle is disabled or substantially limited in one or more major life activities. Moreover, Sleep Number fails to explain how the jury's belief that McGonegle might have a "disability" would make it meaningfully more sympathetic to McGonegle than its belief that McGonegle has only an "impairment," given that, either way, McGonegle and his doctor will testify to the nature and extent of McGonegle's essential tremor.

Accordingly, evidence that McGonegle previously brought a disability discrimination claim based on actual disability, and that the Court dismissed the claim, would have a legitimate purpose only if McGonegle somehow opened the door by presenting evidence or argument that McGonegle is actually disabled. As discussed above, the Court does not intend to admit such evidence or argument. Accordingly, the Court **GRANTS** McGonegle's Motion in Limine re: Previously Dismissed Discrimination Claim (Doc. 46).

**C.  Sleep Number May Not Introduce Evidence Of McGonegle's Past Incidents At Work To Show How McGonegle Likely Acted During His Confrontation With Roborecki, But Might Be Able To Introduce Such Evidence For A Different, Appropriate Purpose.**

McGonegle also filed a Motion in Limine re: Impermissible Character Evidence (Doc. 45), requesting that the Court prevent two witnesses, Katie Sigmon and Laura Sigmon, from testifying about interactions they had with McGonegle in which he allegedly acted "impertinently." (*Id.* at #873). In a similar vein, McGonegle asks the Court to exclude from evidence an email that Katie Sigmon sent to a Sleep Number

12

manager about McGonegle one week after the decision to terminate him. According to McGonegle, the email contains "a number of negative statements at [sic] McGonegle's character" and is also hearsay. (*Id.* at #873–74).

Under Federal Rule of Evidence 404(b), Sleep Number may not introduce evidence of McGonegle's previous behavior at work to support its argument that the jury should believe Roborecki's account of her confrontation with McGonegle because McGonegle had allegedly acted in a similar fashion in the past. But that does not mean that Sleep Number could not present such evidence for another proper purpose. For example, Sleep Number might be able to introduce evidence of McGonegle's past behavior at work if decisionmakers who terminated him knew about that behavior and relied on it as part of their termination decision. In that case, such evidence would be offered not in support of an impermissible "propensity inference" about how McGonegle likely acted during the relevant confrontation with Roborecki, but rather to show that Sleep Number terminated McGonegle because of his conduct rather than because of any impairment.

Even then, however, such evidence might be more prejudicial than probative under Federal Rule of Evidence 403. For example, if any connection to Sleep Number's decision to terminate McGonegle were tenuous at best, then evidence of past incidents (prior to the confrontation with Roborecki at issue here) may have such a strong likelihood of supporting an impermissible "propensity inference" that this potential prejudice might outweigh the probative value of the evidence as regards Sleep Number's state of mind.

13

Relatedly, under Federal Rule of Evidence 404(a), Sleep Number may not introduce the negative email from Katie Sigmon unless it can show that the probative value of that email for a legitimate purpose outweighs the email's tendency to lend itself to an impermissible "propensity inference" about how McGonegle likely behaved in his confrontation with Roborecki. Perhaps in an effort to preview how it might seek to meet that standard at trial, in its Response in Opposition (Doc. 54, #918) to the Motion in Limine (Doc. 45) under discussion here, Sleep Number states in general terms how, in its view, the email in question supports its legitimate nondiscriminatory reasons for firing McGonegle. Sleep Number does not explain, though, how that email could be probative of Sleep Number's reason for firing McGonegle, given that Sleep Number fired McGonegle a week before Sigmon sent the email in question.

As with any other specific item of evidence, the Court defers final ruling until Sleep Number seeks to introduce the email at trial. But preliminarily, and without having seen the email in question, the Court doubts that Sleep Number can make the required showing, unless McGonegle places the adequacy of Sleep Number's post-termination investigation at issue. That is, so as long as McGonegle sticks to challenging Sleep Number's decision to terminate him as discriminatory, the Court struggles to see what legitimate inference the jury could draw from a negative email about McGonegle sent to a Sleep Number decisionmaker after Sleep Number had already fired McGonegle. On the other hand, if McGonegle were to veer into the territory of challenging the adequacy of Sleep Number's post-termination

14

investigation, then it is conceivable (although by no means certain) that Sleep Number could introduce the email in question to rebut that challenge.

Similarly, the email in question would be hearsay (in addition to being impermissible character evidence) if offered to prove the truth of the negative statements it contains about McGonegle's character. *See* Fed. R. Evid. 801(c)(2). In that case, the email would also be inadmissible as hearsay unless an exception to the rule against hearsay applied. *See generally* Fed. R. Evid. 803. But the email would not be hearsay if offered for a different, appropriate purpose, such as to illustrate Sleep Number's relevant state of mind (although, again, the post-termination timing of the email may make that a difficult argument).

In short, the Court **GRANTS IN PART** and **DENIES IN PART** McGonegle's Motion in Limine re: Impermissible Character Evidence (Doc. 45). Sleep Number may not present evidence of prior bad acts by McGonegle whose only probative value would be to support an inference that McGonegle likely acted similarly on the occasion at issue here. Sleep Number also may not introduce evidence whose tendency to support such an impermissible "propensity inference" outweighs its probative value for a legitimate purpose. On the other hand, Sleep Number may introduce evidence whose probative value for a legitimate purpose, including rebutting a relevant argument by McGonegle that opens the door to such evidence, outweighs its prejudicial effect. These are all truisms, of course. But that is all the Court can say at this juncture.

**D.     Evidence Regarding The Unemployment Compensation Review Commission's Decision In This Matter Is Not Admissible Unless Sleep Number Opens The Door To Such Evidence.**

Sleep Number moves to exclude evidence concerning the Unemployment Compensation Review Commission's previous decision in this matter. (*See* Mot. in Limine to Exclude Testimony and Documents Related to Unemployment Compensation Review Commission Decision, Doc. 48). McGonegle represents that he does not intend to introduce evidence relating to the proceedings or decision at issue, (*see* Doc. 57, #395), except to the extent that Sleep Number may open the door in some way. Accordingly, the Court **GRANTS** Sleep Number's Motion (Doc. 48).

## CONCLUSION

For the reasons above, the Court **DENIES** Sleep Number's Motion in Limine Regarding Exclusion of Evidence Supporting Unpled Alcoholism Claim (Doc. 43), **GRANTS** Sleep Number's Motion in Limine to Exclude Testimony and Documents Related to Unemployment Compensation Review Commission Decision (Doc. 48), and **GRANTS IN PART** and **DENIES IN PART** Sleep Number's Motion in Limine to Exclude Testimony and Argument of Dismissed Claim and Speculative Testimony on Remaining Claim (Doc. 42), as discussed in more detail above. The Court also **GRANTS** McGonegle's Motion in Limine Re: Previously Dismissed Discrimination Claim (Doc. 46), **GRANTS** McGonegle's Motion in Limine Re: Plaintiff's Impairments (Doc. 47), and **GRANTS IN PART** and **DENIES IN PART** McGonegle's Motion in Limine Re: Impermissible Character Evidence (Doc. 45), as discussed in more detail

16

above. The Court emphasizes again that these rulings are preliminary pending determination of the admissibility of any particular evidence at trial.

    **SO ORDERED.**

| | |
|---|---|
| February 9, 2022 | |
| **DATE** | **DOUGLAS R. COLE**<br>**UNITED STATES DISTRICT JUDGE** |